[No. 22621. Department Two. December 30, 1930.]

THELMA E. SWANK, *Appellant,* v. LIQUIDATORS, *Respondent.*[1]

*John D. Williams* and *Claude C. Snider,* for appellant.

*Frank H. Reeves* and *Gordon Powers,* for respondent.

BEALS, J.—Plaintiff, by her second amended complaint, upon which this action was tried, sought specific performance of a contract for the conveyance of real estate, alleging in her complaint that defendant was an Oregon corporation, that Frank H. Reeves was its duly authorized agent and as such executed on defendant's behalf a written memorandum as follows:

[1]Reported in 294 Pac. 563.

"December 13, 1928.
"N½ of NE¼ of Sec. 34 (continuing with description of property).
"Will give q. c. deed for $450. Cash in 10 days.
"LIQUIDATORS, By Frank H. Reeves, Atty."

Plaintiff alleged her acceptance of this offer and a subsequent tender on her part to defendant of the sum of $450, coupled with a demand for a quitclaim deed from defendant conveying to plaintiff the real estate described in the memorandum above referred to. Plaintiff further alleged that, at the time of the making of the tender, she, by her attorney, executed and delivered to defendant the following writing:

"December 20, 1928.
"Liquidators,
"Pacific Building,
"Portland, Oregon.
"Gentlemen:

"We are prepared to carry out on our part the terms of agreement made December 13th instant by which you agree to convey for four hundred and fifty dollars, cash, to be paid within ten days, the following described real property located in Clark county, Washington:

"North half of northeast quarter of section thirty-four; north half of northwest quarter of section thirty-five; township six north, range three east of Willamette meridian. Except, southeast quarter of northwest quarter of northeast quarter of section thirty-four and northwest quarter of northwest quarter of northeast quarter of section thirty-four.

"At this time we tender you for deed as agreed four hundred and fifty dollars, gold coin of U.S.A., which, if not accepted will be kept open for your acceptance two days, and may be had during that time on notice to the undersigned, O. W. Eastham, at 905 Couch Building, Portland, Oregon. The deed prepared by me and running to Thelma E. Swank may be executed, or quitclaim deed in the usual form may be delivered.

This is intended as a demand for conveyance in accordance with your agreement.

"Yours very truly,
"(Signed)  O. W. Eastham;"

and that she thereafter received from defendant, under date December 22, 1928, a written refusal to carry out the agreement. Defendant answered plaintiff's complaint, admitting its ownership of the property and certain other of the allegations therein contained, but denying that it had agreed to convey the property to plaintiff, or that it was in any way obligated to do so.

From the testimony it appears that Mr. O. W. Eastham, as plaintiff's agent, procured from Mr. Reeves, on or about December 13, 1928, the memorandum hereinabove set forth, and thereafter delivered to defendant the demand for conveyance, under date December 20, 1928, above quoted, with which demand defendant refused to comply. It also appears that December 18, 1928, Mr. Eastham presented to Mr. Reeves a form of a bargain and sale deed running from defendant to plaintiff, with the request that defendant execute the same and deposit the deed in escrow with the following order, also prepared by Mr. Eastham and delivered to defendant:

"Portland, Oregon,
"December 18, 1928.

"Security Savings & Trust Co.,
"Portland, Oregon.

"On payment to you for my account, on or before Monday, December 24, 1928, of four hundred and fifty dollars, please deliver the accompanying deed of Liquidators to Thelma E. Swank to O. W. Eastham or order."

It further appears from the testimony that, at a meeting of the board of directors of defendant corporation, at which Mr. Eastham was present, held

December 18, 1928, the board voted to refuse to convey the property to plaintiff.

The action was tried to the court and resulted in a decree in defendant's favor dismissing the action, from which plaintiff appeals.

Respondent argues, *inter alia*, that no decree could have been entered in appellant's favor directing a conveyance of the real property in question to appellant, because appellant proved no written contract sufficient to comply with the statute of frauds, and that therefore the decree entered by the trial court was correct. The original memorandum upon which appellant's cause of action is based does not contain the name of any purchaser. Appellant's name first appears in the deed and the order directed to Security Savings and Trust Company, which were prepared by appellant's agent and delivered to respondent December 18, 1928. These documents were not part of the original memorandum of agreement, nor were they prepared by respondent or accepted in any way by it; on the contrary, respondent's board of directors on December 18 refused to convey the property, of which action appellant's agent had immediate knowledge. It appears from the evidence that this action by the board of trustees was taken late in the afternoon, while the proposed deed and order were presented to respondent's agent during the morning.

Appellant contends that the original memorandum was completed and the name of the proposed grantee supplied by the form of deed and order which were delivered to respondent's agent, and that thereby the name of the prospective purchaser was added to the contract and the same was rendered sufficient under the statute of frauds to require a decree of specific performance. In support of this contention, appellant cites several authorities, including the opinion of

this court in the case of *Le Marinel v. Bach,* 114 Wash. 651, 196 Pac. 22. In the case cited it appeared that Mr. and Mrs. Bach, under date April 1, 1919, executed a written proposal to convey a tract of real estate, in exchange for another tract, the proposition being directed simply to ''you,'' without naming anyone. Underneath the signatures of Mr. and Mrs. Bach, appears:

''We the undersigned hereby accept your proposition. Dated this 5th of April 1919.

''Felix Le Marinel
''Margaret Le Marinel.''

Thereafter possession of the properties involved was taken in accordance with the contract, and later the action was brought for specific performance. It is stated in the opinion that this court assumed that the contract was covered by the statute of frauds, and it was held that it sufficiently appeared from the entire instrument that the ''you'' mentioned in the contract referred to the Le Marinels, who wrote and signed an acceptance of the offer upon the contract itself, and that consequently the purchasers were sufficiently identified on the face of the writing.

That was a very different situation from that presented in the case at bar. The memorandum under date December 13 is not directed to anyone. So far as the memorandum itself indicates, it may have been intended as a public advertisement, as copy to be set in type, or as a notice to be posted on a bulletin board. It bears no acceptance by appellant, nor any indication that appellant or anyone else ever saw or heard of it. The form of deed which appellant later prepared, together with the order for delivery thereof upon payment of the sum of $450, were prepared by appellant's attorney, do not in any way refer to the original memorandum, and were never accepted by

respondent, but, on the contrary, were promptly rejected by it. The case cited is not in point here.

Appellant also cites the case of *Cossitt v. Hobbs,* 56 Ill. 231. In this case it appeared that Mr. Cossitt wrote on the back of a card:

"Will take for the N. W. quarter Sec. 23, 160 acres, less R. R., $300 per acre, one-third cash, bal. 1 and 2 years, 8 per cent.    F. D. Cossitt;"

and that Mr. Hobbs thereafter wrote on the same card:

"Your terms are accepted.    J. B. Hobbs."

Thereafter an abstract and survey were furnished by Mr. Cossitt, who thereby acted upon Mr. Hobbs' acceptance. It was held that these two writings appearing on the same card, coupled with the subsequent delivery of the abstract, etc., formed a completed contract which the courts would enforce.

The case last cited and the case of *Le Marinel v. Bach, supra,* are alike in that the names of both parties appeared upon the same instrument, the contract in each case consisting of a signed written offer, bearing thereon a written and signed acceptance. In each case it appeared that the acceptance of the offer had been brought to the knowledge of the party making the same, who in some way recognized the contract and at a later date sought to repudiate the contract on the ground that it did not comply with the provisions of the statute of frauds.

Appellant contends that, because the original memorandum states a cash price, respondent was not concerned with the name of the prospective purchaser, and that therefore the memorandum, when considered in connection with the statute of frauds, should be more liberally construed and the statute less strictly applied than in case of a sale on terms. Whether or not this doctrine might be applied in a case presenting a different state of facts, we are satisfied that it is

not applicable in the case at bar. The writings relied upon as sufficient to enforce a decree of specific performance of a contract to convey real estate, whether for a cash consideration or otherwise, must disclose a definite agreement between designated parties. This rule is stated in the note to the case of *Frahm v. Metcalf*, 75 Neb. 241, 106 N. W. 227, 13 Am. & Eng. Ann. Cas. 312, as follows:

"The general rule is that the note or memorandum required to remove a contract from the operation of the statute of frauds must show the parties to the contract either by naming them or by so describing them that they may be identified."

In 25 R. C. L., title "Statute of Frauds," § 272, page 642, it is stated that:

"To render subsequent communications between the parties sufficient as a memorandum to charge one of them, it must appear therefrom that the party to be charged recognizes or admits the making of the contract."

In the case at bar, the authority of Mr. Reeves to bind respondent by the memorandum which he signed as its attorney is strenuously denied, but even if he had such authority, which we doubt, before respondent could be held liable under a contract for the sale of the land mentioned in the memorandum, something more would be necessary than here appears to connect the memorandum with appellant, as the record discloses only, after the making of the original memorandum, acts by appellant, naturally in her own interest, which acts were, when brought to respondent's knowledge, promptly repudiated by it. Neither the deed prepared by appellant nor the order which accompanied the same contained any reference whatever to the original memorandum. They are not connected therewith either physically or by contents, save that

the deed and memorandum both describe the same property. While no such speculation is entitled to weight, it is interesting to wonder what appellant's position would have been had respondent, after the delivery of the memorandum, prepared a deed to appellant, tendered the same to appellant with a demand for the purchase price, and then, upon appellant's refusal to complete the contract, sued appellant for specific performance; or, on the other hand, if appellant, after tendering the deed to respondent, as she did, had changed her mind and refused to complete the contract. Could respondent in that event have successfully maintained an action against her for specific performance?

While it may well be, as contended by appellant, that a written acceptance need not be on the same identical paper as the offer, the writings here relied upon by appellant are upon any theory wholly insufficient to make a binding contract. A dozen people might have presented to respondent forms of deeds from respondent to as many different parties, covering the property described in the memorandum, claiming that the same were acceptances of the original offer above set forth. The provisions of the statute of frauds cannot be complied with in any such manner. We find no authority which supports the proposition that such writings as those now before us, under the circumstances here shown, constitute a complete, binding agreement to convey real property within the statute of frauds.

Judgment affirmed.

MITCHELL, C. J., FULLERTON, BEELER, and MILLARD, JJ., concur.